# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HITACHI CONSUMER ELECTRONICS CO., LTD., and HITACHI ADVANCED DIGITAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TOP VICTORY ELECTRONICS (TAIWAN)CO. LTD., TPV INT'L (USA), INC., ENVISION PERIPHERALS, INC., TOP VICTORY ELECTRONICS (FUJIAN) CO. LTD., TPV ELECTRONICS (FUJIAN) CO. LTD., and TPV TECHNOLOGY LTD., <br><br> Defendants. | CIVIL ACTION NO. 2:10-CV-260-JRG <br><br><br> JURY |

**HITACHI'S MOTION FOR JUDGMENT AS A MATTER OF LAW
PURSUANT TO RULE 50(B) THAT THE '243 PATENT IS INFRINGED,
<u>OR ALTERNATIVELY FOR A NEW TRIAL PURSUANT TO RULE 59(A)</u>**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL STANDARDS | 1 |
| III. | FACTUAL BACKGROUND | 3 |
| IV. | ARGUMENT | 8 |
| | A. TPV's Expert Used an Improper Claim Construction, Mandating JMOL | 9 |
| | B. Alternatively, the Court Should Grant a New Trial on the '243 Patent Because the Jury's Verdict Is Against the Weight of the Evidence | 12 |
| V. | CONCLUSION | 12 |

# **TABLE OF AUTHORITIES**

**CASES**

*3M v. Chemque, Inc.*,
   303 F.3d 1294 (Fed. Cir. 2002)..................................................................................................2

*Am. Home Assurance Co. v. United Space Alliance, LLC*,
   378 F.3d 482 (5th Cir. 2004) ......................................................................................................2

*DataTreasury Corp. v. Wells Fargo & Co.*,
   No. 2:06-cv-72, 2010 WL 5140732 (E.D. Tex. Sep. 27, 2010)............................................2, 11

*Finisar Corp. v. DirecTV Group, Inc.*,
   523 F.3d 1323 (Fed. Cir. 2008)..................................................................................................1

*Function Media, LLC v. Google, Inc.*,
   No. 2:07-cv-279, 2011 WL 4017953 (E.D. Tex. Sept. 9, 2011).................................................2

*Hiltgen v. Sumrall*,
   47 F.3d 695 (5th Cir. 1995) .......................................................................................................1

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
   No. 08-cv-04990, 2012 WL 3222237 (N.D. Cal. Aug. 8, 2012) .........................................2, 10

*Smith v. Transworld Drilling Co.*,
   773 F.2d 610 (5th Cir. 1985) .....................................................................................................3


**RULES**

Fed. R. Civ. P. 50.............................................................................................................................1

Fed. R. Civ. P. 59...................................................................................................................1, 2, 12

Plaintiff Hitachi Consumer Electronics Co., Ltd. ("Hitachi") respectfully renews its request that the Court enter judgment as a matter of law ("JMOL") pursuant to Rule 50(b) that Top Victory Electronics (Taiwan) Co. Ltd., TPV Int'l (USA), Inc., Envision Peripherals, Inc., Top Victory Electronics (Fujian) Co. Ltd., TPV Electronics (Fujian) Co. Ltd., and TPV Technology Ltd. (collectively, "TPV" or "Defendants") have infringed and continue to infringe claims 4 and 5 of U.S. Patent 6,549,243 (the "'243 Patent"), thus entitling Hitachi to a new trial on damages and willfulness with respect to those products. Alternatively, Hitachi requests that the Court grant a new trial on infringement, damages, and willfulness in accordance with Rule 59(a).

## I. INTRODUCTION

No reasonable jury could have found non-infringement of claims 4 and 5 of the '243 Patent based upon the evidence presented at trial. Hitachi's expert, Professor Myler, presented a comprehensive element-by-element analysis to the jury demonstrating *prima facie* infringement of each of the 205 products in JTX-003 which was accused of infringing the '243 Patent (the "Accused Products"). TPV presented one, and only one, reason why the '243 Patent was not infringed: because the Accused Products allegedly lacked a plurality of video processor sections. The sole evidence in support of TPV's lone non-infringement theory was an opinion by TPV's expert, Dr. Reader. However, because Dr. Reader failed to apply the Court's claim construction in rendering his opinion, his testimony is a legal nullity, and the Court should grant JMOL or in the alternative a new trial on infringement of the '243 Patent.

## II. LEGAL STANDARDS

On motions for JMOL or a new trial, this Court applies the law of the regional circuit. *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008). Judgment as a matter of law is appropriate when "a reasonable jury would not have a legally sufficient

evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). *See also Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995) (judgment as a matter of law should be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did") (internal quotation marks omitted). If substantial evidence does not support the jury's verdict, the district court must grant judgment as a matter of law. *See, e.g.*, *3M v. Chemque, Inc.*, 303 F.3d 1294, 1305–08 (Fed. Cir. 2002) (district court erred in denying plaintiff's motion for JMOL because substantial evidence did not support jury's verdict of non-infringement and anticipation); *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 487 (5th Cir. 2004) (applying "substantial evidence" standard). Courts in this District will grant JMOL in patent cases under appropriate circumstances. *See, e.g.*, *Function Media, LLC v. Google, Inc.*, No. 2:07-cv-279, 2011 WL 4017953, at \*\*2-3 (E.D. Tex. Sept. 9, 2011) (granting in part patentee's motion for JMOL of validity).

Calling an expert to the stand is insufficient to stave off JMOL if the expert's opinion does not comport with the Court's claim construction. "Where a party's expert offers legal conclusions on an ultimate issue, judgment as a matter of law may be appropriate when the expert's opinion cannot be reconciled with either the language of the claims at issue or the evidence presented at trial." *See Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-cv-04990, 2012 WL 3222237, at \*2 (N.D. Cal. Aug. 8, 2012). As a matter of law, an expert's opinion based on an improper claim construction cannot support a jury verdict. *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2010 WL 5140732, \*6 (E.D. Tex. Sep. 27, 2010) (Folsom, J.).

Moreover, pursuant to Rule 59(a), "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are

excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

### III. FACTUAL BACKGROUND

The '243 Patent is titled "Digital Broadcast Receiver Unit" and discloses a receiver for receiving digital video signals with different "video signal formats," a term which was construed by the Court to mean "number of scan lines and whether the lines are progressive or interlaced." A video signal format is typically denoted by the number of scan lines followed by the letter "p" (progressive) or "i" (interlaced); for example, "480p," "480i," 525i," "720p," "1080p," and "1080i" are each a video signal format. *See, e.g.*, 4/8/2013 P.M. Trial Tr. at 128:09-22; 4/11/2013 A.M. Trial Tr. at 41:10-12, 62:04-13.

Hitachi is asserting dependent claims 4 and 5 of the '243 Patent against the Accused Products. These claims, and independent claim 1 upon which they depend, read as follows:

> **1.** A digital broadcast receiver unit for receiving a digital multiplexed signal stream having multiplexed signals commonly encoded using a same encoding/decoding standard, said multiplexed signals including video signals corresponding to a plurality of different video signal formats, and isolating and reproducing at least one video signal, said unit comprising:
> [1] an isolator to isolate one video signal from a received said digital multiplexed signal;
> [2] a decoder to decode the video signal from said isolator according to said encoding/decoding standard;
> [3] a plurality of video processor sections, with respective video processor sections providing video processing according to a different video signal format of said plurality of different video signal formats; and
> [4] a controller using information from the received said digital multiplexed signal to determine a video signal format of said video signal from said decoder, and selecting one video processor section of said video processor sections to perform video processing of said video signal according to a determined video signal format thereof.
>
> **4.** A unit as claimed in claim **1**, wherein said plurality of video processor sections is more specifically provided via at least one of a common application specific integrated circuit (ASIC) and a common microprocessor adapted to selectively perform processing according to any of said plurality of video processor sections.

3

      **5.** A unit as claimed in claim 4, wherein said selecting by said controller is more specifically performed by said controller selectively performing processing with respect to said one video processor section while not performing processing with respect to other ones of said video processor sections.

As identified above by bracketed numbers, there are four elements to claim 1. The receiver has an isolator [1] which isolates an incoming video signal chosen from a multiplexed signal. The decoder [2] then decodes the isolated video signal. The controller [4] uses information received in the signal to determine the video signal format of the decoded signal and to select a video processing section to perform video processing according to a determined video signal format. The devices which perform that processing are video processor sections [3], each of which is capable of processing according to a different video signal format. *See generally* 4/8/2013 P.M. Trial Tr. at 138-141. The examples given in the patent are video processor sections which process video signal formats 525i, 525p and 1080i. *See* '243 Patent at 3:7-20. Claims 4 and 5 add additional elements that were not contested at trial.

      Hitachi accused 205 models of televisions of infringing claims 4 and 5 of the '243 Patent. *See* 4/8/2013 P.M. Trial Tr. at 146:05-23; JTX-003 (listing the Accused Products). Hitachi established with uncontroverted evidence that the Accused Products were manufactured by TPV and imported into the United States by TPV and/or by its customers. *See* 4/10/2013 A.M. Trial Tr. at 39-42 (Lu deposition), 42-45 (Wu deposition), 45-64 (Gui deposition).

      Through its technical expert, Professor Myler, Hitachi presented detailed evidence to the jury, assisted by claim charts and representative technical documents, as to how the Accused Products, each containing a particular system-on chip computer chip ("SOC"), met each and every limitation of claims 4 and 5 of the '243 Patent. Professor Myler explained to the jury that his conclusions were based on an extensive review and analysis of technical documents and testing of physical samples of the accused televisions and representative samples thereof. *See*

4/8/2013 P.M. Trial Tr. at 114-54; 4/9/2013 A.M. Trial Tr. at 5-65. Professor Myler's testimony regarding the basis for his opinions on each Accused Product based upon the representativeness of this evidence was unrebutted and unimpeached. *See*, *e.g.*, 4/8/2013 P.M. Trial Tr. at 150:19-151:01; 4/9/2013 A.M. Trial Tr. at 6:03-14, 26:13-19.

It was undisputed that the Accused Televisions receive multiplexed signals in different video signal formats, have an isolator [1] which isolates one format, a decoder [2] to decode the chosen signal, and that the controller [4] selects a video processing section to perform processing of the format. It was also undisputed that each Accused Product included a scaler and a deinterlacer. *See, e.g.*, 4/11/2013 A.M. Trial Tr. at 48:04-15, 50:06-10, 50:20-24. Where the parties differed was over whether the scaler and the deinterlacer constituted video processor sections as required by element [3]. *See*, *e.g.*, 4/11/2013 A.M. Trial Tr. at 30:21-31:02.

The facts relating to the operation of the televisions were uncontested. Progressive format signals such as 480p or 720p are sent to the scaler, which processes them for output to the display panel by changing the number of lines and pixels to meet the size of the display panel. *See* 4/9/2013 A.M. Trial Tr. at 17:02-13; 4/11/2013 A.M. Trial Tr. at 58:17-60:18, 62:04-17, 63:01-07. Interlaced formats such as 1080i are sent to the deinterlacer for deinterlacing, which is a process through which the even and odd lines are reconfigured to form a new picture frame. *See* 4/8/2013 P.M. Trial Tr. at 130:15-133:23; 4/9/2013 A.M. Trial Tr. at 13:21-14:16.

Professor Myler applied the ordinary meaning of processing as required by the Court's claim construction. He opined that processing included conversion from one format to another, which would occur if either the number of scan lines or the progressive/interlaced parameter were changed. 4/9/2013 A.M. Trial Tr. at 13:07-20, 42:06-17. Because the deinterlacer and scaler change one video signal format into another, he opined that they were video processor

sections within the meaning of the claim. *See, e.g.*, 4/9/2013 A.M. Trial Tr. at 10:12-11:25, 13:04-14:02.

Dr. Reader contested the presence of one and only one element of the claims-in-suit, element [3]—"the plurality of video processor sections, which is a part of the third limitation of Claim 1." 4/11/2013 A.M. Trial Tr. at 30:12-31:15.[1] However, Dr. Reader did not take issue with Professor Myler's analysis of how the televisions operate or contest that the scalers and deinterlacers process video signals. He could not—each converts one video signal format into another video signal format, which is a very robust and complex form of video processing. *See, e.g.*, *id.* at 62:14-63:05 (admitting that scaler performs "processing"). Scaling requires creating new lines and pixels. *See id.* at 59:19-25. Deinterlacing requires combining odd and even lines from different fields to create a full frame containing all scan lines. *See* 4/8/2013 P.M. Trial Tr. at 132:24-133:21.

In search of a non-infringement argument, TPV resorted to concocting an improper claim construction and passing it off as the Court's. Throughout the trial, TPV represented that the Court's construction of "video signal format" is "the number of scan lines AND whether the lines are progressive or interlaced," using a demonstrative with a capitalized and underlined "AND". *See, e.g.,* 4/9/2013 A.M. Trial Tr. at 64:03-25. The emphasis on "AND" did not appear in the Court's construction but was designed to confuse the jury into believing, incorrectly, that the Court had construed "processing" in the asserted claims to require conversion of ***both*** the number of scan lines and the progressive/interlaced aspect of the signal.

---

[1] TPV did not contest validity of the '243 Patent. *See, e.g.*, 4/11/2013 A.M. Trial Tr. at 56:21-24 ("You accept the validity of that patent, don't you, on behalf of TPV? A. I've not provided an opinion about the validity of this patent in this case.").

Having rewritten the claim, Dr. Reader then provided his non-infringement opinion. He testified that "neither the scaler taken alone nor the de-interlacer taken alone can meet the Court's construction of what a video processor section must be." *See* 4/11/2013 A.M. Trial Tr. at 48:13-15. However, the Court did not provide a construction of "what a video processor section must be," and certainly did not adopt the construction Dr. Reader applied, which is that every video processor section must **both** modify the number of scan lines **and** modify whether the signal is progressive or interlaced. This purported additional claim element appears nowhere in the Court's construction or in the claim language itself.

Using his improper claim construction, Dr. Reader opined that the scalers in the Accused Products were not video processing sections because they do not also change whether the signal is progressive or interlaced:

> Q: Why does the scaler not process according to the Court's definition?
>
> A: Because the scaler is just concerned with the number of scan lines. The scaler has nothing to do with whether the lines are progressive or interlaced. It literally doesn't care. It doesn't process according to whether the lines are progressive or interlaced. So it cannot meet this definition for video signal format.

4/11/2013 A.M. Trial Tr. at 48:25-49:08. He ignored the fact that the scaler manifestly processes progressive video signal formats.

Dr. Reader used the same misguided approach with respect to the deinterlacers in the Accused Products, arguing that deinterlacers were not video processing sections because they do not change the number of lines:

> Q. Is the de-interlacer in the SOC's of TPV TVs a video processor section, as that term is used in Claim 1 of the '243 patent?
>
> A. No, it's not.
>
> Q. And why do you hold that opinion?

7

> A. Again, because it doesn't process according to both the number of lines and whether the – the lines are interlaced or progressive.

4/11/2013 A.M. Trial Tr. at 50:21-51:03; *see also id.* at 41:20-24. He ignored the fact that the deinterlacer manifestly processes interlaced video signal formats.

Nothing in the Court's claim construction nor the '243 Patent requires that a video processor section **both** modify the number of scan lines **and** modify whether the signal is progressive or interlaced. That is an additional claim element which Dr. Reader proposed in order to overcome the *prima facie* case of infringement presented by Hitachi. Unable to resist the fact that the scaler processes progressive formats like 720p and the deinterlacer processes interlaced formats like 1080i, and that these are different video signal formats under the Court's construction, Dr. Reader resorted to redrafting the claim.

Completing the attack, TPV counsel argued during closing that *Hitachi* had not used the Court's construction and that only TPV had done so. Counsel cynically argued that Professor Myler "admitted" that he had not used the Court's construction because "[t]he Court's construction has the word, and, in it." 4/12/2013 P.M. Trial Tr. at 87:09-12. He even called that the "turning point" in the trial. *Id.* at 87:13-16.

In fact, Hitachi did use the Court's claim construction. TPV made up its own construction and then passed it off as the Court's in an effort to mislead the jury. Nevertheless, the parties agree on one crucial point: this is a battle of dueling claim constructions—and that raises a question of law.

## IV. <u>ARGUMENT</u>

No reasonable jury could have found non-infringement of claims 4 and 5 of the '243 Patent based upon the evidence presented at trial. Hitachi and Professor Myler presented a *prima facie* case of infringement. TPV presented a single theory of non-infringement to the jury, which

8

was that scalers and deinterlacers do not provide "video processing according to a different video signal format" because they do not *both* modify the number of scan lines *and* modify whether the signal is progressive or interlaced. This testimony did not comport with the Court's claim construction. The only competent evidence with respect to infringement of the '243 Patent was that of Professor Myler, whose testimony was unimpeached. Accordingly, the Court should grant JMOL to Hitachi on infringement of the '243 Patent, or in the alternative grant a new trial.[2]

### A.   TPV's Expert Used an Improper Claim Construction, Mandating JMOL

Professor Myler presented detailed and, except as noted below, uncontroverted evidence regarding infringement of the Accused Products. *See* 4/8/2013 P.M. Trial Tr. at 114-54; 4/9/2013 A.M. Trial Tr. at 5-65. Professor Myler showed how the Accused Products met each claim limitation of independent claim 1 and of dependent claims 4 and 5. *Id.* With respect to the plurality of video processor sections element, Professor Myler testified that a scaler and a deinterlacer were each present in all of the Accused Products, and that the presence of both constituted a plurality of video processor sections. *See generally* 4/9/2013 A.M. Trial Tr. at 10:12-19:20.

There is no dispute that the Accused Products accept different video signal formats, such as 480i, 720p, and 1080i. *See, e.g.*, 4/11/2013 A.M. Trial Tr. at 41:04-12. There is also no dispute that the Accused Products have scalers and deinterlacers. *See, e.g., id.* at 48:04-15, 50:06-10, 50:20-24. The parties' experts agreed on another critical factual issue: that for two video signals, either a difference in the number of lines, or a difference in whether the lines are

---

[2]   Professor Myler presented two theories of infringement. Hitachi is seeking JMOL based only on the first mode of infringement in which the scaler and deinterlacer constitute separate video processor sections. Professor Myler also opined that the scaler had multiple internal video processor sections built into software. Hitachi seeks a new trial on the second mode of infringement due to the taint of Dr. Reader's improper construction.

9

progressive or interlaced, means that the two video signals are of "different video signal formats." *See* 4/9/2013 A.M. Trial Tr. at 13:04-14:02; 4/11/2013 A.M. Trial Tr. at 41:04-12, 62:04-62:13. TPV fought this definition tooth and nail at the *Markman* hearing but lost that battle. *See* D.I. 170 (*Markman* Opinion and Order) at 46-49.

Despite the parties' agreement that the Court's claim construction means that 720p and 1080p are different video signal formats, Dr. Reader asserted that a scaler which scales a 720p signal into a 1080p signal is not a video signal processor section because it does not also perform deinterlacing. He then said that a deinterlacer which deinterlaces a 1080i signal into a 1080p signal is not a video processor section because it does not also perform scaling. The basis for his bizarre position was his assertion that the Court's claim construction required that each video processor section **both** convert the number of scan lines **and** toggle between interlaced and progressive formats. Thus, the sole issue upon which TPV's non-infringement case rests is a claim construction point: whether the claim element "video processor sections providing video processing according to a different video signal format" requires **both** modifying the signal according to the number of scan lines **and** modifying the signal according to whether the lines were progressive or interlaced.

Because Dr. Reader applied the wrong claim construction, his testimony is irrelevant, and Professor Myler's testimony concerning infringement stands unrebutted and unimpeached. *See, e.g.*, *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. 08-cv-4990, 2012 WL 3222237, at *2 (N.D. Cal. Aug. 8, 2012) (citing cases and stating that "Where a party's expert offers legal conclusions on an ultimate issue, judgment as a matter of law may be appropriate when the expert's opinion cannot be reconciled with either the language of the claims at issue or the

evidence presented at trial."). As Judge Folsom has explained, expert testimony which is contrary to the Court's claim construction cannot support a jury verdict:

> The opinions of Plaintiff's expert to the contrary at trial were outside of the Court's claim construction and thus as a matter of law cannot support the jury's finding of infringement as to Claim 46 of the '988 Patent. *Cf. Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242-43 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

*DataTreasury Corp. v. Wells Fargo & Co., et al.*, No. 2:06-cv-72, 2010 WL 5140732, at *6 (E.D. Tex. Sep. 27, 2010).

All that the asserted claims require is at least two video processor sections which process according to different video signal formats, such as 480i, 720p and 1080i. That mirrors the preferred embodiment in the patent which discloses video processors for processing 525i, 525p and 1080i signals. Figure 1 shows processing sections 141, 142 and 143, which refer respectively to 525-line interlaced (525i), 525-line progressive (525p) and 1080-line interlaced (1080i) signals. *See* '243 Patent at 3:07-20. The claim does not require that that the video processors both modify the number of scan lines and modify whether the signal is interlaced or progressive. That is a new element which TPV has improperly grafted into the claim, and TPV's new construction reads the preferred embodiment out of the claim.

Moreover, in the grammar of claim 1, the adjective "different" modifies the term "video signal format." The word "different" does not separately modify each individual characteristic of a video signal format, as TPV's theory improperly requires. All that is necessary for infringement is that a scaler in each television be able to process according to one video signal format, and that a deinterlacer be able to process according to a different video signal format. That happens when, for example, an Accused Product with a 1080p display screen can scale a 720p input signal to display properly on the screen, and can deinterlace a different 1080i signal

11

to also display properly on the same screen. Contrary to the claim construction relied upon by TPV, nothing in the claim language imposes an additional requirement that the scaler be capable of deinterlacing, or that the deinterlacer be capable of scaling. The word "different" makes it clear that the scalers and deinterlacers in the Accused Products are each video processing sections because each processes according to a different video signal format.

The claim construction that TPV relied upon for its only evidence of non-infringement is manifestly incorrect and contrary to the ordinary meaning of the claim language and the Court's claim construction. Accordingly, Dr. Reader's testimony is irrelevant, and Hitachi is entitled to judgment as a matter of law on infringement of the '243 Patent.

### B. Alternatively, the Court Should Grant a New Trial on the '243 Patent Because the Jury's Verdict Is Against the Weight of the Evidence

As described above, the *prima facie* evidence of infringement of the Accused Products was unrebutted. Professor Myler's credibility was not challenged. On the sole issue which TPV attempted to rebut infringement, Dr. Reader provided the only testimony, and that testimony is contrary to the claim construction. Therefore, the jury's verdict was against the substantial weight of the evidence and upholding the jury's verdict would result in a miscarriage of justice. Thus, a new trial is warranted.

### V. CONCLUSION

There is no issue of fact or credibility that the Court needs to decide. The only theory of non-infringement heard by the jury was manifestly contrary to the claim language and the Court's claim construction. Therefore, a judgment of infringement of the '243 Patent, as a matter of law, is appropriate, along with a new trial on damages and willfulness regarding the Accused Products. Alternatively, Hitachi requests that the Court grant a new trial on infringement, damages, and willfulness in accordance with Rule 59.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  May 13, 2013 | /s/ *Martin J. Black* |
|  | Martin J. Black |
|  | martin.black@dechert.com |
|  | DECHERT LLP |
|  | Cira Centre, 2929 Arch Street |
|  | Philadelphia, PA 19104 |
|  | (215) 994-4000 |
|  |  |
|  | Jeffrey B. Plies (State Bar No. 24027621) |
|  | jeff.plies@dechert.com |
|  | Stephen R. Dartt (State Bar No. 24042370) |
|  | stephen.dartt@dechert.com |
|  | DECHERT LLP |
|  | 300 W. 6th Street, Suite 2010 |
|  | Austin, TX 78701 |
|  | (512) 394-3000 |
|  |  |
|  | *Attorneys for Plaintiffs Hitachi Consumer Electronics Co., Ltd. and Hitachi Advanced Digital, Inc.* |

**OF COUNSEL:**
Otis W. Carroll
Texas Bar No. 03895700
Patrick Kelley
Texas Bar No. 11202500
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703
(903) 561-1600
(903) 581-1071 (fax)
nancy@icklaw.com
patkelley@icklaw.com

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system  per Local Rule CV-5(a)(3) on May 13, 2013.

                                                    */s/ Martin J. Black*
                                                   Martin J. Black