**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **HITACHI CONSUMER** | § | |
| **ELECTRONICS CO. LTD., et al.,** | § | |
| *Plaintiffs,* | § | |
| | § | **CAUSE NO. 2:10-CV-260-JRG** |
| **V.** | § | |
| | § | |
| **TOP VICTORY ELECTRONICS** | § | |
| **(TAIWAN) CO LTD, et al.,** | § | |
| *Defendants.* | | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are the parties' post-trial motions. Having considered the parties' written submissions, the Court: (1) **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '310 and '375 Patents are Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 359); (2) **DENIES** Hitachi's Motion Pursuant to Rule 59 For a New Trial on All Issues Due to Submission of False Testimony and Improper Argument (Dkt. No. 360); (3) **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the DigiCipher Reference is not Prior Art, that the '310 and '375 Patents are Not Invalid, and for a New Trial With Respect to All Issues on the '310 and '375 Patents (Dkt. No. 361); and (4) **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '243 Patent is Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 362).

I.      **BACKGROUND**

Hitachi Consumer Electronics Co., Ltd. and Hitachi Advanced Digital, Inc. (collectively, "Hitachi") filed this patent infringement action against Top Victory Electronics (Taiwan) Co. Ltd.,

TPV International (USA), Inc., Envision Peripherals, Inc., Top Victory Electronics (Fujian) Co. Ltd., and TPV Technology Ltd. (collectively, "TPV") and Vizio, Inc. ("Vizio") on July 22, 2010. Hitachi alleges TPV and Vizio infringe the following patent claims by importing and selling televisions compliant with the ATSC A/53 standard: Claim 7 of U.S. Patent No. 7,286,310 ("the '310 patent"), claims 26 or 30 of U.S. Patent No. 8,009,375 ("the '375 patent"), claims 15 or 16 of U.S. Patent No. 5,502,497 ("the '497 patent"), and claims 4 or 5 of U.S. Patent No. 6,549,243 ("the '243 patent"). Hitachi resolved its case against Vizio before jury selection and went to trial against TPV on April 8, 2013. Following a five day trial, the jury returned a unanimous verdict finding that TPV does not infringe any of the asserted claims. The jury also found that claim 7 of the '310 patent and claims 26 and 30 of the '375 patent are invalid. (*See* Dkt. No. 335.)

## II.    APPLICABLE LAW REGARDING RULE 50

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). The Fifth Circuit "uses the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995).   Thus, a jury verdict must be upheld, and judgment as a matter of law may not be granted, unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* at 700. The jury's verdict must be supported by "substantial evidence" in support of each element of the claims. *Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).

A court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000). The moving party is entitled to judgment as a matter of law "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict." *Int'l Ins. Co. v. RSR Corp.,* 426 F.3d 281, 296 (5th Cir. 2005).

## III.     APPLICABLE LAW REGARDING RULE 59

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). The Court must view the evidence "in a light most favorable to the jury's verdict, and [] the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

## IV.     HITACHI'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) THAT THE '310 AND '375 PATENTS ARE INFRINGED OR, ALTERNATIVELY, FOR A NEW TRIAL PURSUANT TO RULE 59(A) (DKT. NO. 359)

Hitachi moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) that TPV infringes claim 7 of the '310 patent and claims 26 and 30 of the '375 patent (the

3

"Disputed Claims"). Hitachi urges the Court to reverse the jury's verdict as to these claims because (1) Hitachi has made a *prima facie* case that the ATSC televisions ("TVs") met each and every claim element, (2) TPV's non-infringement arguments were legally flawed, and (3) TPV made irrelevant arguments to confuse the jury. Alternatively, Hitachi requests a new trial on these claims pursuant to Rule 59(a).

### A.   Hitachi's *prima facie* case of infringement

At trial, Hitachi accused 242 models of TVs of literally infringing claim 7 of the '310 patent and claims 26 and 30 of the '375 patent because they are configured to receive and display signals broadcast in accordance with the ATSC standard.[1] The Disputed Claims encompass an apparatus comprising a receiver, a demodulator, an error corrector, a first expander for digital video content, and a second expander for digital audio information. Hitachi contends that it has presented sufficient evidence through its technical expert, Mr. Jeffrey Hamilton, to prove the accused ATSC TVs possessed each and every element of the Disputed Claims. (Dkt. No. 359 at 5-6.) Specifically, Hitachi contends Mr. Hamilton explained that TV signals broadcast in accordance with the ATSC standard includes video information compressed using the MPEG-2 video compression standard and audio information compressed using the AC-3 audio compression standard. Mr. Hamilton further testified that once the broadcast signals were received, the accused television receivers used MPEG-2 and AC-3 decoders to bit-expand the video and audio signals. In expanding the video and audio signals, Mr. Hamilton described, the decoders necessarily expanded the signal corrected by the error corrector to recover the picture.

In response, TPV argues that Hitachi's infringement analysis focused on pieces of claim limitations that recite certain components (*i.e.*, "receiver," "demodulator," "error corrector," "two

---

[1] Hitachi did not allege infringement of any limitation under the Doctrine of Equivalents.

4

bit expanders"), but ignored other claim language that specify how those components are interconnected. For example, TPV points to the relationship in claim 7 of the '310 patent that requires "a first expander which bit-expands the video signal of the digital signal corrected by the error corrector in accordance with the first compression method" and "a second expander which bit-expands the audio signal of the digital signal corrected by the error corrector in accordance with the second compression method." However, TPV argues, Mr. Hamilton does not explain the correlation between the first and second expanders and their particular operation on corresponding signals. Instead, he merely testified that in an accused product, the "first expander" limitation is satisfied because "MPEG decoder can receive a signal from an error corrector [and that the] error correction must be performed before you can do the bit expansion," and the "second expander" limitation is satisfied because "audio is compressed [and] expanding [] must be done. (4/9/2013 AM Tr. at 121:10-16 and 122:2-123:6.)

TPV additionally asserts that Hitachi failed to put forth a *prima facie* case as to any of the 242 models of accused TVs or 20 different accused chipsets. Rather than showing how any single one of the accused products or chipset meets all the limitations of the asserted claims, TPV argues Mr. Hamilton mixed and matched different chipset datasheets and standard documents to address different elements of the same asserted claim. In reply, Hitachi explained that due to the number of accused products, and since infringement was predicated on compliance with the ATSC standard, Mr. Hamilton properly relied on a set of documents that were representative of all the accused products.

The burden to prove patent infringement was on Hitachi to "show that the accused device[s] contain[] each limitation of the asserted claim." *Function Media, L.L.C. v. Google, Inc.*,

708 F.3d 1310, 1330-31 (Fed. Cir. 2013). In considering Hitachi's motion, the Court "must consider all the evidence in a light most favorable to [the prevailing party], must draw reasonable inferences favorable to [the prevailing party,] must not determine credibility of witnesses, and must not substitute its choice for that of the jury between conflicting elements in the evidence." *Perkins-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984). The Federal Circuit is clear that "[c]ourts grant JMOL for the party bearing the burden of proof only in extreme cases, when the party bearing the burden of proof has established its case by evidence that the jury would not be at liberty to disbelieve and the only reasonable conclusion is in its favor." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001).

The record does not support a finding that this is such a rare case. The Court is persuaded that the jury could have found Hitachi failed to show the accused products met each limitation of each asserted claim. The jury was also at liberty to disbelieve Mr. Hamilton's infringement testimony, or find the selection of documents was not representative of all the accused products. While it is unclear whether the verdict of no infringement results from the jury's determination that Hitachi failed to make a *prima facie* case of infringement or is based on TPV's successful rebuttal evidence if a *prima facie* case was initially made, the Court concludes that based on the evidence presented at trial, a reasonable jury would not have been foreclosed from finding Hitachi failed to meet its burden of proof.

### B.  TPV's non-infringement arguments

Hitachi asserts the non-infringement arguments advanced by TPV's expert, Mr. Anthony Wechselberger, are improperly predicated on the fact that the accused products include additional components other than those recited in the asserted claims. Hitachi particularly takes issue with

6

Mr. Wechselberger's account of additional processing by unclaimed circuit elements (such as the deinterleaver, Reed-Solomon decoder, derandomizer, and de-multiplexer that are present in the accused devices), which take place between the error corrector and the bit expanders. Mr. Wechselberger uses the additional components to form his opinion that the output signal from the error corrector and the input signal to the bit-expander are not the same signal, as the asserted claims require. Hitachi contends this type of analysis is legally flawed and is irrelevant to the issue of infringement.

TPV responds that Mr. Wechselberger did not premise his opinion on additional elements within the accused TVs which would prevent infringement. Instead, he educated the jury about how the accused products operate pursuant to the ATSC standard by analyzing the claim language and explaining how each of the claimed components must be interconnected to meet the claim limitations. (4/11/2013 AM Tr. at 89:17-129:7; 4/11/2013 PM Tr. at 11:6-14:19.) TPV says further that it is actually Hitachi who failed to address how the expander limitations must operate on particular signals in its infringement case. This is a situation, says TPV, where the jury assessed both experts' competing testimony, found Mr. Wechselberger's testimony to be more credible than Mr. Hamilton's testimony, and rendered a verdict in accordance therewith. Based on a review of the evidence, the Court agrees with TPV.

Hitachi and TPV took differing positions on how certain elements of a claim should be read on the accused products and presented expert witnesses who testified accordingly. For example, as described above, Hitachi argues the digital signal is necessarily the same signal even though it undergoes multiple error correction and coding steps, whereas TPV takes the position that the signal is not the same. Similarly, the opposing experts held divergent opinions on whether trellis

codes satisfy the "error correction signal added commonly to both the video signal and the audio signal" limitation of claim 7. (4/11/2013 AM Tr. at 98:2-104:1, 114:25-117:16.) The jury heard both sides' interpretation of the claim language, considered the experts' competing testimony, and rendered a verdict of no infringement. This is a classic case of the jury believing TPV's expert witness over Hitachi's expert witness. This Court may not effectively supplant the jury's assignment of credibility or weight attributed as between the experts, as those are sole functions of the jury. Whether the jury initially found that Hitachi established a *prima facie* case of infringement or not, the Court finds that a reasonable jury could have concluded Mr. Wechselberger's expert opinion sufficiently rebutted a *prima facie* showing of infringement. Therefore, the Court finds substantial evidence exists in the record to support a jury verdict that TPV does not infringe claim 7 of the '310 patent or claims 26 and 30 of the '375 patent.

### C.  Jury Confusion

Hitachi also contends it is entitled to judgment as matter of law of infringement because TPV engaged in irrelevant arguments to confuse the jury as to Hitachi's infringement case. Hitachi points to three instances of alleged misconduct: (i) Mr. Wechselberger's testimony that if certain components were removed, the accused products would not work; (ii) TPV's implication to the jury that the asserted claims were limited to video tape recorders (VTRs); and (iii) injecting DigiCipher into Hitachi's case-in-chief on infringement.

In its opposition, TPV first responds that its "will not work" argument was only used to show that the accused products could not practice the asserted claims if they were redesigned to fit within the asserted claims. For example, TPV explained, if the "first expander" and "second expander" were reconfigured to receive the particular signals as required by the claims, the

accused products would not work. Hitachi's own expert, Mr. Hamilton, agreed such is the case. (4/9/2013 PM Tr. at 85:9-87:9.)

Second, TPV asserts it only discussed VTRs to provide a background of the alleged invention after Hitachi first mentioned VTRs through testimony from Mr. Hamilton. (4/9/2013 AM Tr. at 86:5-6.) The burden is on Hitachi to prove by a preponderance of the evidence that the accused systems infringe its asserted patents. If TPV presented evidence Hitachi disputes or finds improper, the burden shifts to Hitachi to cross-examine the witness on the correctness or relevance of such testimony. Hitachi had a full and fair opportunity to cross-examine TPV's witnesses at trial and, in fact, did cross-examine Mr. Wechselberger on some of the very issues about which it now complains. Specifically, Hitachi asked Mr. Wechselberger if he is "aware of any Court claim construction that limits the claims in suit to videotape recorders?" to which Mr. Wechselberger answered "No." (4/11/2013 PM Tr. 62:20-63:2.) Hitachi then called Mr. Hamilton a second time during its rebuttal case to reinforce its infringement theory and specifically refute Mr. Weschselberger's testimony on the issue of "the same signal" and "additional elements" discussed above. (4/12/2013 AM Tr. at 4:19-9:9.) As is often the case, disputed theories at trial tend to become more apparent in post-trial briefing. However, the clarity of hindsight does not lessen Hitachi's burden of proof at trial. Hitachi cannot be entitled to judgment as a matter of law simply because it failed to clearly identify or effectively rebut its adversary's position during trial.

With respect to Hitachi's third point on TPV's use of the DigiCipher during the questioning of Mr. Hamilton, the Court held a bench conference once Hitachi raised this objection. As it became clear that the issue could not be addressed expeditiously at the bench, the Court excused the jury so the parties could have a full and fair opportunity to discuss and attempt to

9

resolve the issue. (4/9/2013 PM Tr. at 41:5-45:3.) Once both sides were fully heard, the Court found Defendants did not take any improper steps by presenting the DigiCipher reference because it was a pre-admitted exhibit and Hitachi's motion *in limine* to preclude the reference was previously denied. (*Id.* at 45:9-51:19.) Nevertheless, in an effort to avoid jury confusion, the Court directed TPV to refrain from substantive testimony relating to DigiCipher until its invalidity case. (*Id.* at 51:22-55:5.) The Court's directive was obeyed. However, insofar as Hitachi's current complaint relates to the answers elicited by TPV before Hitachi made an objection, and absent any evidence of jury confusion, the Court finds the jury was not confused by the short testimony providing essentially background information.

The jury heard the evidence presented by both sides and the Court's unambiguous instruction regarding the proper method for conducting an infringement analysis before returning a verdict of non-infringement. (4/12/2013 PM Tr. at 31:1-12.) Absent compelling evidence pointing so overwhelmingly in favor of Hitachi that no reasonable jury could return a contrary verdict (which was not presented at trial), the Court concludes that the jury chose to believe or disbelieve the testimony they heard as a part of weighing all the evidence and then reaching their verdict in this regard. *RSR Corp.*, 426 F.3d at 296. Accordingly, the Court does not find an insufficient evidentiary basis for a reasonable jury to find as this jury did in this case. Similarly, the Court does not find the verdict to be so against the weight of the evidence as to warrant a new trial.

### D. Conclusion

Based on the foregoing, the Court **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '310 and '375 Patents are Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 359).

V.   **HITACHI'S MOTION PURSUANT TO RULE 59 FOR A NEW TRIAL ON ALL ISSUES DUE TO SUBMISSION OF FALSE TESTIMONY AND IMPROPER ARGUMENT (DKT. NO. 360)**

Hitachi moves for a new trial under the Federal Rule of Civil Procedure 59 based on (1) alleged false testimony by Mondy Houng that denied Hitachi a fair trial, and (2) TPV's reliance on DigiCipher to show that the jury's verdict was tainted by evidence that Hitachi acted as a bully toward TPV. "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Transworld Drilling*, 773 F.2d at 612-13. Hitachi's primary basis for both of its arguments for a new trial is based on principles of unfairness.

**A.   Mondy Houng's testimony**

The background for Hitachi's current allegation stems from an April 13, 2010 mediation between Hitachi and TPV, during which TPV believes a threat was made by Hitachi that precipitated the declaratory judgment action brought by TPV against Hitachi in California. *Top Victory Electronics (Taiwan) Co., Ltd. v. Hitachi, Ltd.*, No. CV 10-1579 (N.D. Cal.) TPV's filing of the California action was intentionally placed front and center before the jury during opening statements in this case by both sides. Hitachi started by proclaiming it was "sucker punch[ed]" by TPV's California lawsuit "out of the blue" on April 14, 2010. (4/8/13 AM Tr. at 54:19-22.) TPV followed by telling the jury to look carefully through the evidence because there is a critical fact about a "pre-meeting lawsuit" that will be missing from Hitachi's story. (*Id.* at 81:7-18.) Reference to the April 13 mediation and whether or not it should be admissible testimony became a topic of much debate throughout trial, all of which occurred outside the presence of the jury. Ultimately, the Court sustained Hitachi's objections based on the mediation privilege and barred TPV from asking Mondy Houng, TPV's corporate representative, about the April 13, 2010 mediation for that

11

specific reason. Subsequently during direct examination, TPV's counsel asked Mr. Houng about a

meeting that occurred on March 23, 2010:

> Q.      And as part of your decision, on behalf of the company, to authorize
> the company in April, are you aware of what happened at that meeting on March
> 23rd, 2010?
> A.      The report we got -- the reporting we got from the meeting was that
> **the Hitachi representative has threatened to cut down -- shut down our U.S.
> TV market during that meeting.**
> Q.      Okay. Did -- did you know how they intended to shut down your
> business?
> A.      They said -- **they said they would sue us in the International
> Trade Commission in United States**, and we're aware that U.S. International
> Trade Commission is different from court. It was very -- it has a high risk for us.

(4/10/2013 PM Tr. at 107:11-25 (emphasis added)). Hitachi now contends that when the

Court prevented TPV from going into the April 13 mediation, Mr. Houng unilaterally moved the

date of the meeting to March 23 to circumvent the Court's ruling and fabricated a threat that did

not exist. As support for its position, Hitachi points to a statement in a brief TPV filed in the

California action that "[t]here is no evidence that TPV commenced this case in the face of specific,

concrete indications that a suit by Hitachi in some other forum was imminent." (Dkt. No. 360 at 1.)

This inconsistency between Mr. Houng's response and TPV's statement in California, according

to Hitachi, proves that Mr. Houng's testimony in this Court was false. Hitachi submits that Mr.

Houng's false testimony influenced the jury to believe TPV over Hitachi. Additionally, Hitachi

contends such prejudice could not have been cured during trial because Charles Chen, the TPV

employee who actually attended the March 23 meeting and reported to Mr. Houng, was not

allowed to testify.

In its opposition, TPV responds that the sentence in the California brief was taken out of

context and claims that it's not inconsistent with Mr. Houng's testimony. TPV explained that the

above statement was made in response to Hitachi's claim that the action was an improper

anticipatory lawsuit filed to avoid litigating in the Eastern District of Texas. The emphasis in the statement was on the term "imminent" because, for a first-filed declaratory judgment action to be considered "anticipatory," there must have been a "specific, concrete" threat that a lawsuit was "imminent" in the forum the declaratory judgment plaintiff was trying to avoid. (Dkt. No. 368 at 6.) Reviewing the statement in the context of a response to Hitachi's motion, the Court finds such to be consistent with Mr. Houng's testimony here. In addition, the Court finds that neither statement precludes the existence of some kind of threat of suit by Hitachi. The Court also finds it not entirely unbelievable that multiple threats of suit, increasing in urgency, were communicated between Hitachi and TPV over the twelve month period they spent negotiating a license. Indeed, Hitachi has presented no evidence to the contrary.

A party seeking a new trial on the basis of allegedly false testimony must prove by clear and convincing evidence that: (i) the witness "willfully perjured himself," and (ii) the allegedly false testimony prevented the party from fully and fairly presenting its case. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496-97 (5th Cir. 1995). Hitachi's accusation is a serious one and its burden of proof is high, yet the strength and degree of Hitachi's allegations regarding the nature of Mr. Houng's testimony diminished significantly between its opening brief and its reply brief on this issue. (*Compare* Dkt. No. 360 at 1 ("That testimony was false") to Dkt. No. 373 at 1 ("Mr. Houng's testimony is seriously misleading if not downright untruthful.")). The standard for a new trial in this circumstance is not potentially misleading testimony, but rather willfully committing perjury. These are very different standards. Consequently, the Court finds Hitachi has failed to establish the first prong of the *Diaz* analysis and therefore, does not reach the second prong. Interestingly to the Court, although Hitachi was clearly aware of TPV's allegedly false statement

well before this trial, Hitachi chose not to use it to impeach Mr. Houng during cross-examination. Instead, Hitachi elected to raise it for the first time in a motion for new trial. This allegedly false statement of TPV is not a justifiable basis upon which to require the expenditure of the parties' and the Court's resources for a new trial.

### B.  The DigiCipher reference

Hitachi contends to have suffered prejudice by TPV's use of the DigiCipher reference to characterize Hitachi as a "schoolyard bully." (Dkt. No. 360 at 9.) To support its position, Hitachi points to statements made in TPV's opening and closing statements, cross-examination questions about DigiCipher during Hitachi's infringement case, and the importance presumed by the jury's request to see the DigiCipher reference during deliberations. However, when pressed, Hitachi's true complaint "is not with TPV counsel's closing argument, but rather with the underlying [] DigiCipher evidence on which it was based."[2] (Dkt. No. 373 at 4.) As the Court has concurrently found the DigiCipher reference to be prior art and properly admitted in this case, below, the Court likewise concludes that Hitachi was not prejudiced by the introduction or use of the DigiCipher reference by TPV.

### C.  Conclusion

Based on the foregoing, the Court **DENIES** Hitachi's Motion Pursuant to Rule 59 for a New Trial on All Issues Due to Submission of False Testimony and Improper Argument (Dkt. No. 360)

---

[2]  Hitachi does not dispute that it failed to object or move for a mistrial on the ground of improper argument to the jury based on TPV's alleged arguments that DigiCipher caused bullying, the American invention theme, or argument that Hitachi did not contribute to the development of the ATSC standard.

**VI.   HITACHI'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) THAT THE DIGICIPHER REFERENCE IS NOT PRIOR ART, THAT THE '310 AND '375 PATENTS ARE NOT INVALID, AND FOR A NEW TRIAL WITH RESPECT TO ALL ISSUES ON THE '310 AND '375 PATENTS (DKT. NO. 361)**

Hitachi moves for judgment as a matter of law pursuant to the Federal Rule of Civil Procedure 50(b) that (1) DigiCipher is not prior art and does not invalidate the '310 patent, (2) there is no motivation to combine DigiCipher with U.S. Patent No. 5,070,503 to Shikakura ("Shikakura") to render the '375 patent obvious, and (3) TPV's exploitation of DigiCipher confused the jury and prejudiced Hitachi to entitle it to a new trial.

**A.   DigiCipher constitutes prior art**

The DigiCipher reference (admitted as DX-599) is a printed document at the heart of TPV's invalidity case. It generally describes an all-digital HDTV system for over-the-air broadcast televisions. The document was created by the VideoCipher Division of General Instruments Corp. ("GI") and bears a date of June 8, 1990 on the first page. There is no dispute that the DigiCipher system found in DX-599 discloses all the elements of claim 7 of the '310 patent. Instead, the primary disagreement is over DigiCipher's qualification as prior art—specifically, whether or not it was publicly available prior to July 20, 1990, the priority date of the asserted patents. To demonstrate that it was not publicly available and is not prior art, Hitachi relies only on Mr. Scott Lery's testimony stating that he does not know *exactly* when the DigiCipher reference became publicly known.

In response, TPV points to Mr. Lery's testimony that he was given DX-599 upon arrival at GI in late June of 1990. (4/11/2013 AM Tr. at 8:12-17, 11:21-12:6.) Mr. Lery was hired at GI to build the DigiCipher system. (*Id.*) Mr. Lery testified that when he arrived at GI, DX-599 was already readily available to anyone within GI and that even Dr. Chris Heegard, an outside

15

consultant, had access to the system information contained in DX-599. (*Id.* at 12:12-20, 15:12-18.) DX-599 was not labeled or otherwise designated as confidential despite Mr. Lery's testimony that GI had a practice of marking proprietary information as confidential, and the document was not otherwise maintained or treated in a confidential manner. (*Id.* at 10:8-11:10.) Instead, Mr. Lery specifically recalled that the DigiCipher system was publicized by GI because he was given a Xeroxed copy of a press release about the same time he received the DigiCipher document. (*Id.* at 11:11-20.)

There is also evidence in the record that GI was the first company to submit an all-digital proposal to the Federal Communications Commission (FCC). For example, a former Hitachi employee, John Henderson, testified that he was a member of a working party tasked with reviewing proposals submitted to the FCC by various companies in the industry. (4/10/2013 PM Tr. at 137:6-139:24.) The working parties were made up of people who were interested in the process and chose to join. (*Id.*) Mr. Henderson testified that, as part of his duties, he listened to the presentation for the DigiCipher system, the first all-digital system submitted to the FCC. (*Id.*) GI's proposal for an all-digital, high-definition system to the ATSC was confirmed by Dr. Clifford Reader, TPV's expert witness. (4/11/2013 AM Tr. at 24:15-19.) This is further corroborated by Mr. Lery who testified that when he received DX-599, he was aware that a copy was in the possession of the government agency. (4/11/2013 AM Tr. at 15:4-21.)

Whether a reference is publicly accessible is determined on a case-by-case basis based on the "facts and circumstances surrounding the reference's disclosure to members of the public." *In re Klopfenstein*, 380 F.3d 1345, 1350 (Fed. Cir. 2004). The jury, as the trier of fact, was free to believe or disbelieve the testimony presented by the witnesses and to evaluate their credibility.

Taking the record as a whole, the jury could fairly weigh the evidence and reasonably infer that the DigiCipher system described in DX-599 was submitted to the FCC and seen by members of the interested public prior to July 20, 1990. The Court finds that a reasonable jury would have a legally sufficient evidentiary basis to find that Defendants met their clear and convincing burden to prove that the DigiCipher reference constitutes prior art in this case. As such, this prior art is adequate to invalidate the '310 patent. These facts were found by the jury in this case and Hitachi has given the Court no compelling basis to obviate such jury finding.

### B. Claims 26 and 30 of the '375 patent are invalid as obvious

Hitachi moves the Court to supplant the jury's verdict and instead, find claims 26 and 30 of the '375 patent to be valid because, it argues, TPV failed to provide any reasons why one skilled in the art would be motivated to combine DigiCipher with Shikakura. Specifically, Hitachi argues Mr. Wechselberger's explanation that both the Shikakura error corrector with DigiCipher references are in the same field of art does not explain why one of ordinary skill in the art would have the necessary motivation to combine the two references.

TPV responds by citing Mr. Wechselberger's testimony comparing the disclosure in DigiCipher to the disclosure in Shikakura. (4/11/2013 PM Tr. at 26:19-27:16.) In his testimony, Mr. Wechselberger describes that both references relate to digital audio and video information, first and second error correcting circuits, similar types of processing functions, and transmission systems using similar types of digital information. (*Id.*) The difference, Mr. Wechselberger explains, is that DigiCipher disclosed adding error correction information *commonly* to both the audio and video information, and Shikakura taught that error correction could be added to the audio and video streams *separately*. (*Id.* at 21:20-22:16, 25:20-26:5.) Since the concept of adding

error correction information separately or commonly is known by persons of ordinary skill in the art, there exists a reasonable motivation to combine the two references. (*Id.* at 25:3-19.) The Court agrees and finds the record reflects that TPV provided substantial evidence for a motivation to combine DigiCipher with Shikakura, and doing so reasonably supports the jury's finding that the '375 patent is invalid as obvious.

Hitachi also argues that, even if one skilled in the art had a reason to make this combination, the claimed inventions in the '310 and '375 patents were still non-obvious in light of certain secondary considerations presented by Mr. Hamilton. Specifically, Mr. Hamilton testified that the claimed inventions are commercially successful, satisfied a long-felt and unmet need in the industry, and are included in 100% of all televisions sold in the U.S. (4/12/2013 AM Tr. at 24:12-28:10.) He further testified that the '310 and '375 patents were subject to multiple licensing agreements and enjoyed industry respect. (*Id.* at 26:1-27:14.) Hitachi contends these secondary considerations, which demonstrate the claimed inventions were non-obvious, remain un-rebutted by TPV. However, "a highly successful product alone would not overcome the strong showing of obviousness." *Tokai Corp. v. Easton Enterprises, Inc.*, 632 F.3d 1358, 1371 (Fed. Cir. 2011) (citing *Media Techs. Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1339 (Fed. Cir. 2010)). In spite of Mr. Hamilton's testimony, the success of the claimed invention is debatable since the jury clearly did not find the '310 and '375 patents tied to 100% of all televisions sold in the U.S. Additionally, the jury heard testimony that Hitachi was not involved in developing the ATSC standard, which is the crux of Hitachi's infringement allegations. (4/10/2013 PM Tr. at 140:3-8, 142:4-144:25.) The finder of fact has considered the evidence presented by both sides, made a determination based on such evidence, and rendered its verdict. The Court has no basis from which

18

to find that the verdict lacks a sufficient evidentiary basis such that a reasonable jury could not have found as this jury did in this case.

### C.  TPV's use of DigiCipher

Hitachi re-urges its request for a new trial to ameliorate the asserted prejudice caused by TPV's use of the DigiCipher reference during trial. The Court previously addressed this argument in Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '310 and '375 Patents are Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 359), and found the short background testimony given by Mr. Hamilton did not confuse the jury. In this motion, Hitachi now adds that TPV contaminated its infringement case by keeping an image of the DigiCipher reference on the projector screen during a bench conference. However, Hitachi was the party who made the objection and invoked the sidebar discussion. Hitachi did not ask for the image to be removed from the screen during such bench conference. Simply put, Hitachi re-urges its earlier prejudice argument by contending that the lengthy bench conference emphasized the importance of this document to the jury before they were ushered out of the courtroom. This is argument unpersuasive.

The Court comes to the same conclusion as it did before. The brief testimony, bench conference, and argument outside the presence of the jury relating to DigiCipher, while disruptive to the flow of trial, is a normal and inherent aspect of trial proceedings. While it is the Court's strong preference to address such disputes during pretrial hearings and during the morning hour that the Court specifically allocates for such issues, it is not uncommon to stop the presentation of evidence during trial and deal with issues as they arise outside the jury's presence. Indeed, the Court clearly instructed the jury:

19

> "[A]t times during the trial, it was necessary for the Court to talk to the lawyers here at the bench out of your hearing or by calling a recess and talking to them while you were out of the courtroom all together. We met because often during a trial something comes up that does not involve the jury. *You should not speculate on what was said during such discussions out of your presence*."

(4/12/2013 PM Tr. at 23:15-23 (emphasis added)). If every time the Court conducts a bench conference or sends the jury out of the courtroom it opens itself to claims of fostering unfairness or prejudice toward one side or the other, then the effective administration of justice would be severely hindered.

Hitachi's arguments of prejudice and jury confusion appear to be born out of little more than speculation. Indeed, the jury's request to see the DigiCipher exhibit during deliberations is not indicative of confusion, but rather is a wholly foreseeable result of TPV's focus on DigiCipher during its case-in-chief. With respect to Hitachi's general complaint, that TPV's invalidity case was predicated upon the DigiCipher reference, such does not in and of itself deprive Hitachi of a fair trial. On the contrary, TPV gambled its defense on one prior art reference and ultimately prevailed. Evidence is not unfairly prejudicial merely because it is adverse to the moving party. *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 733 (5th Cir. 2011). On review of the trial record, the Court finds that the jury considered all of the evidence, judged the credibility of the witnesses, and rendered a verdict consistent with the weight of the evidence.

### D.  Conclusion

Based on the foregoing, the Court **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the DigiCipher Reference is not Prior Art, that the '310 and '375 Patents are Not Invalid, and for a New Trial With Respect to All Issues on the '310 and '375 Patents (Dkt. No. 361)

**VII. HITACHI'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO RULE 50(B) THAT THE '243 PATENT IS INFRINGED OR, ALTERNATIVELY, FOR A NEW TRIAL PURSUANT TO RULE 59(A) (DKT. NO. 362)**

Hitachi moves this Court to enter a judgment as a matter of law that TPV infringes claims 4 and 5 of the '243 patent because TPV's expert witness, Dr. Reader, failed to apply the Court's claim construction on one contested claim element. Claims 4 and 5 of the '243 patent both depend upon independent claim 1. The disputed element in claim 1 is "a plurality of video processor sections, with respective video processor sections providing video processing according to a different video signal format of said plurality of different video signal formats." The term "video signal formats" was previously construed by the Court to mean "number of scan lines and whether the lines are progressive or interlaced." (*See* Markman Opinion, Dkt. No. 170.) The parties agreed that the term "video processor sections" would have its plain and ordinary meaning. (*Id.*) Hitachi now contends that Dr. Reader's testimony was incompatible with the Court's construction and cannot be reconciled with the language of the claims. The section of challenged testimony is reproduced as follows:

> A.      …And the claim limitation says that each of those video processor sections provides video processing according to a different video signal format, okay?
> Q.      (By Mr. Landis) Now, just to remind the jury, has the Court construed the term video signal format?
> A.      Yes, it has.
> Q.      How -- what's the construction that the Court has used?
> A.      So video signal format has been construed by the Court to be the number of lines and whether the lines are progressive or interlaced.
> Q.      So using that Court -- using the Court's construction, what does this claim language mean to you?
> A.      Well, it tells me that -- that each of the video processor sections is going to process the signal according to the number of lines and whether the lines are interlaced or progressive.

(4/11/2013 AM Tr. 37:1-18.)

21

Hitachi argues that TPV avoided the plain and ordinary meaning of "video processing sections" and improperly limited it to a video processor section that must perform *both* scaling *and* deinterlacing. TPV responds that was not the case; Dr. Reader testified that to meet this claim limitation, a video processor section would have to "process the signal according to the number of lines and whether the lines are interlaced or progressive." (4/11/2013 AM Tr. 37:16-18.) According to TPV, Dr. Reader applied the construction given by the Court for "video signal formats" and, using that construction, Dr. Reader explained the plain and ordinary meaning of "processing according to" what that construction means to a person of ordinary skill in the art. TPV asserts that this is merely a case where Hitachi's expert, Dr. Harley Myler, performed the same analysis but reached a different conclusion (that the claim element would be satisfied by converting *either* the number of scan lines *or* the progressive/interlaced aspect of the signal). On review of the record, the Court agrees with TPV.

"[A]fter the court has defined [a] claim with whatever specific and precision is warranted by the language of the claim and the evidence bearing on the proper constructions, the task of determining whether the construed claim reads on the accused product is for the finder of fact." *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1355 (Fed. Cir. 1998) (citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1280 (Fed. Cir. 1988)). The Court finds that Dr. Reader properly applied the Court's construction of "video signal format." For terms that are given their plain and ordinary meaning, the jury is free to apply an expert's description of the claims if it is consistent with the jury's understanding. *Haberman v. Gerber Products Co.*, 236 F. App'x 592, 600 (Fed. Cir. 2007). Drawing all reasonable inferences from the testimony in TPV's favor, the Court finds a reasonable jury could have reached a finding of no infringement of the '243 patent.

22

Contrary to Hitachi's assertion, this is certainly not a situation where Dr. Reader's opinion cannot be reconciled with either the language of the claims at issue or the evidence presented at trial. The jury, in its role as fact finder, properly evaluated the credibility of both experts and arrived at a verdict consistent with the evidence presented. The Court concludes that substantial evidence exists in the record to support the jury's finding that Hitachi failed to make a *prima facie* case of infringement of the '243 patent.

For the foregoing reasons, the Court **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '243 Patent is Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 362).

## VIII.   CONCLUSION

For the reasons discussed, the Court: (1) **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '310 and '375 Patents are Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 359); (2) **DENIES** Hitachi's Motion Pursuant to Rule 59 For a New Trial on All Issues Due to Submission of False Testimony and Improper Argument (Dkt. No. 360); (3) **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the DigiCipher Reference is not Prior Art, that the '310 and '375 Patents are Not Invalid, and for a New Trial With Respect to All Issues on the '310 and '375 Patents (Dkt. No. 361); and (4) **DENIES** Hitachi's Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) that the '243 Patent is Infringed or, Alternatively, for a New Trial Pursuant to Rule 59(a) (Dkt. No. 362)

**So ORDERED and SIGNED this 18th day of September, 2013.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE